UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CAPITOL INDEMNITY CORPORATION, | Case No. 12-CV-1401 (PJS/JJG) |
| Plaintiff, | |
| v. | |
| LAVERA ASHANTI; DAVID ADAMS; MARLENE ADAMS; JESSE DAVID HOLLOMAN; JOHN DOE; ABC INSURANCE COMPANY, | ORDER |
| Defendants. | |
| MARLENE ADAMS and DAVID ADAMS, | |
| Counterclaimants, | |
| v. | |
| CAPITOL INDEMNITY CORPORATION, | |
| Counterdefendant. | |

Daniel A. Ellerbrock and Joseph A. Nilan, GREGERSON, ROSOW, JOHNSON & NILAN, LTD., for plaintiff/counterdefendant.

Kenneth R. White, LAW OFFICE OF KENNETH R. WHITE, P.C., for defendants/counterclaimants Marlene Adams and David Adams.

Defendant LaVera Ashanti operated a licensed daycare out of her home. Ashanti insured the business through a policy issued by plaintiff Capitol Indemnity Corporation ("Capitol"). On December 19, 2011, defendant Marlene Adams was working in Ashanti's daycare when she was shot in the arm. Capitol brings this action seeking a declaration that its policy provides no coverage for Adams's injuries. Adams and her husband, David Adams, counterclaim for a declaration of coverage.

This matter is before the Court on Capitol's and the Adamses' cross-motions for summary judgment. For the reasons stated below, the Court grants Capitol's motion and denies the Adamses' motion.[1]

## I. BACKGROUND

Ashanti ran a daycare business out of her home. Ashanti Dep. 7-8. The daycare was located in a portion of the basement. Ashanti Dep. 27-28. Ashanti was the sole owner of the business and ran it by herself. Ashanti Dep. 7-8, 11. Occasionally, however, Ashanti called on an acquaintance, Marlene Adams, to substitute for her when Ashanti had an appointment or otherwise could not be at the daycare. Ashanti Dep. 12. Ashanti and Adams first met through Adams's daughter approximately 20 years ago. Adams Dep. 9.

The women's accounts of Adams's history at the daycare differ somewhat. Ashanti testified that she employed Adams to work a few days per week in the daycare over the course of about a year sometime in the 1990s. Ashanti Dep. 11. After that, Ashanti occasionally used Adams as a substitute. Ashanti Dep. 12. According to Adams, however, she never worked regularly at the daycare in the 1990s or at any other time; instead, she had only substituted for Adams, and she had done so on only a handful of occasions beginning in 2005. Adams Dep. 32-33. There is no dispute, though, that before December 19, 2011, Ashanti always paid Adams for her daycare work. Ashanti Dep. 22, 24; Adams Dep. 36.

---

[1] The Court notes that the remaining named defendants are in default, and Capitol does not appear to be pursuing claims against the unnamed defendants. Capitol has not moved for a default judgment against the defaulting defendants, but instead brought a motion for summary judgment on all claims without limiting its motion to the Adamses. The Court will therefore grant summary judgment against all of the named defendants, dismiss all claims against the unnamed defendants without prejudice, and enter judgment.

On December 18, 2011, Ashanti learned that one of her sons, Keith Barnes, had been seriously injured in a car accident. Ashanti Dep. 29-30; Adams Dep. 41. Ashanti and another one of her sons, Jesse Holloman, went to the hospital where Barnes was undergoing surgery and stayed through the night. Ashanti Dep. 29-30. Neither Barnes nor Holloman lived with Ashanti at the time. Ashanti Dep. 7.

About 5:00 a.m. the next morning (December 19), Ashanti called Adams to ask for help with the daycare. Ashanti Dep. 30. Because the children would soon be arriving for the day, Ashanti told Adams that she would meet Adams at the house. Ashanti Dep. 30. According to Ashanti, she also told Adams that she would pay her by leaving money on an upstairs table. Ashanti Dep. 30. Adams denied that the two women talked about payment and testified that she did not expect to get paid because she was doing Ashanti a favor during an emergency. Adams Dep. 39-40. The women also gave divergent accounts of breakfast. According to Adams, Ashanti bought breakfast for her and gave her the change to use to pay for lunch for the children. Adams Dep. 45; Adams Aff. ¶ 3. Ashanti denied buying breakfast for Adams. Ashanti Dep. 32.

Holloman accompanied his mother from the hospital back to the house that morning. While Ashanti was waiting for Adams to arrive, Holloman fell asleep. The parties' accounts differ as to where Holloman fell asleep. Ashanti testified that Holloman was asleep on an upstairs couch, whereas Adams testified that Holloman was asleep in a basement bedroom. Ashanti Dep. 29; Adams Dep. 42. Either way, however, there is no dispute that Holloman was not in the area of the home used as the daycare. Adams Dep. 42-43, 50. After Adams arrived, Ashanti tried to wake Holloman so that they could return to the hospital. Ashanti was unsuccessful, so she went back to the hospital by herself. Ashanti Dep. 29.

At about noon, Adams was preparing lunch for the children when she heard a "pow" and felt a nudge in her arm. Adams Dep. 46, 48. She looked down and saw that her arm was at an odd angle and that she was bleeding. Adams Dep. 48. She had been shot. Adams does not know where the bullet came from, Adams Dep. 48, but a criminal complaint alleges that it came from a bedroom in which Holloman had been sleeping, White Aff. Ex. 7 at CIC 02. Although there is no direct evidence in the record connecting Holloman to the shooting, the parties generally agree that Holloman accidentally fired a gun while in a basement bedroom that was not part of the daycare. Adams has incurred over $200,000 in medical expenses as a result of her injury. Adams Dep. 55.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B.  Insurance

The interpretation of an insurance policy is a question of law. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013). The policy must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning.

*Id.* at 704-05.  If policy language is susceptible to more than one reasonable interpretation, the ambiguity must be resolved in favor of providing coverage to the insured.  *Id.* at 705.  To determine whether an ambiguity exists, courts must consider the language in context and apply common sense.  *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 712 (8th Cir. 2009).

The insured bears the initial burden of proving that her loss is covered by the policy.  *Id.*  Once the insured meets this burden, the burden shifts to the insurer to prove that an exclusion applies to defeat coverage.  *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013).

## C.  The Policy

Ashanti is the named insured under a policy issued effective February 14, 2011 by Capitol.  Ellerbrock Aff. Ex. 1 [hereinafter "Policy"].  As relevant to this case, the policy provides two types of coverage:  "Business Liability" and "Medical Expenses."  Policy at CIC 82, CIC 84.  Under "Business Liability," the policy provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" caused by an "occurrence" (defined as an "accident") that takes place in the "coverage territory" (which includes the entire country).  Policy at CIC 82-83, CIC 94, CIC 96.  Under "Medical Expenses," the policy provides coverage for "medical expenses" for "bodily injury" caused by an accident on premises that the insured owns or rents.  Policy at CIC 84.  There is no dispute that Adams's gunshot injury is a "bodily injury" within the meaning of the policy and that it was caused by an accident that occurred in the coverage territory and on premises that Ashanti owned or rented.  Without more, then, both of these coverages would apply to Adams's gunshot injury.

But the policy includes a crucial endorsement — entitled "Limitation of Coverage to Designated Premises or Project" — that limits coverage as follows:

> This insurance applies only to "bodily injury" . . . and medical expenses arising out of:
>
> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
>
> 2. The project shown in the Schedule.

Policy at CIC 119.

The "Schedule" referred to in the endorsement appears on the same page as the endorsement and is reproduced below:

**SCHEDULE**

| | |
|---|---|
| **A.** **Premises:** | |
| **B.** **Project:** DAYCARE | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Capitol points to this endorsement to argue that (1) coverage is limited to bodily injury and medical expenses "arising out of" the daycare project and (2) Adams's injury does not "aris[e] out of" the daycare project. The Adamses make two arguments in response: First, they argue that Adams's injury does indeed "aris[e] out of" the daycare project. Second, they argue that the policy also provides coverage for bodily injury "arising out of" the "ownership,

maintenance or use of the premises," and that Adams's injury arises out of the use of Ashanti's home. The Court considers the latter contention first.

1. Premises

As illustrated above, the schedule incorporated into the endorsement lists a project — daycare — but does not list a premises. The endorsement also says that "[i]nformation required to complete this Schedule, if not shown above, will be shown in the Declarations." Citing this language, the Adamses argue as follows: (1) the spaced marked "Premises" on the schedule was left blank; (2) because the space was left blank, information is required to complete the schedule; (3) the endorsement says that information required to complete the schedule can be found in the declarations; (4) the declarations mention the address of Ashanti's house; and therefore (5) the policy covers Ashanti's entire house — including the part of the house that was not used for the daycare and in which Holloman was present when he accidentally fired the gun. Because this interpretation of the policy is reasonable, the Adamses say, the policy is at least ambiguous and thus should be construed as covering the entire premises.

Although the Adamses' argument has some surface appeal — and although the endorsement could be clearer (by, for example, filling in "not applicable" in the premises space) — the Court concludes that, when read in the context of the policy as a whole, the endorsement is not ambiguous and the policy does not provide coverage for the entire premises.

There is no dispute that the policy is intended to insure Ashanti's daycare business. The only premium listed on the declarations page is for "Businessowners Coverage Part," Policy at CIC 36, and the application for the policy was entitled "Business Owners Application" and listed "Home Day Care" under "Description of Operations," Ellerbrock Aff. Ex. 2. There is also

no dispute that the contracting parties were aware that the premises were also used as a residence; in the policy application, Ashanti stated that the business was located in her home and identified her homeowner's insurance carrier and policy. Ellerbrock Aff. Ex. 2 at CIC 140.

The policy's main coverage clauses provide broad coverage that is not limited to the daycare business. The very purpose of the "Premises or Project" endorsement is to winnow the extremely broad coverage initially provided by the main coverage clause so that coverage under the policy will match the needs of the business being insured. Indeed, without the limiting endorsement, the policy could hardly be characterized as a business policy at all; there is little else in the policy that ties coverage to anything having to do with the daycare business.

As other courts have noted, the "Premises or Project" endorsement is phrased in the disjunctive, allowing the parties to the insurance policy to choose how to pare down the broad coverage initially provided under the main coverage clauses. *See W. Heritage Ins. Co. v. Darrah*, No. 10-0476, 2010 WL 4780955, at *3-4 (M.D. Pa. Nov. 17, 2010). This makes sense, because not all businesses are conducted in a single location. A daycare business such as Ashanti's is a good example. As Ashanti indicated in the policy application, she sometimes took the children on field trips or to the park. Ellerbrock Aff. Ex. 2 at CIC 140. Given that Ashanti could easily incur liability on such trips, it obviously made sense to elect "project" coverage (which would cover such trips) rather than "premises" coverage (which presumably would not).

In light of the purpose of the endorsement, therefore, the fact that it does not list a premises does not render it ambiguous or suggest that something is missing from the endorsement. The parties had to choose whether to elect project coverage or premises coverage.

They elected project coverage, and the endorsement identifies that project. Nothing more was required.

Even the language on which the Adamses rely supports this conclusion. It states that information "required" to complete the schedule will be shown in the declarations "if not shown above." But there *is* information "shown above" — the "Project" is designated as "Daycare." And because the "Project" space on the schedule is filled in, no further information is "required" to complete the schedule. Again, the point of the endorsement is to elect *either* "premises" *or* "project" as the limiting principle. Once that election was made, no further information was required to complete the schedule, and thus there is no need to refer to the declarations.

The Court's interpretation is in harmony with the policy as a whole, which is unambiguously intended to provide coverage for Ashanti's daycare business and not for Ashanti's home. A contrary interpretation would unreasonably make the policy cover the numerous and varied liabilities that Ashanti may incur as a homeowner — liabilities that are completely unrelated to Ashanti's business. Ashanti did not pay a premium to obtain such coverage and indeed did not *need* such coverage, as she had purchased homeowner's insurance from another insurer. Finally, the Court's interpretation is in accord with the views of other courts, who have similarly found that the disjunctive nature of the endorsement makes it unnecessary to resort to the declarations page when information is included in the endorsement's schedule. *See Darrah*, 2010 WL 4780955, at *4 ("[W]e reject the position that an empty premises box by itself means coverage is provided for premises listed in the Declarations page.

Rather, since the project box contains a description of the activity covered, the endorsement limits coverage to the project described . . . .").[2]

The Court therefore concludes that coverage is limited to bodily injuries arising out of the daycare project and does not extend to injuries arising out of any use of the Ashanti home. The next question, then, is whether Adams's injuries arose out of the daycare project.

2. Project

"The phrase 'arising out of' is broadly construed" and generally connotes "'originating from,' 'growing out of,' or 'flowing from.'" *Dougherty v. State Farm Mut. Ins. Co.*, 699 N.W.2d 741, 744 (Minn. 2005) (quoting *Assoc. Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.*, 229 N.W.2d 516, 518 (Minn. 1975)). Courts often say that, under Minnesota law, the phrase "arising out of" does not require proximate causation but only but-for causation. *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 650 (8th Cir. 2008). As the Court will discuss below, however, Minnesota courts have been clear that something more than *literal* but-for causation is necessary to find that an injury "arose out of" a particular event or circumstance. For that reason, the Court finds that Adams's injury did not "arise out of" the daycare project, even though it is literally true that, but for Adams's work in the daycare, Adams would not have been present in Ashanti's home and therefore would not have been struck by the bullet.

---

[2]Admittedly, the policy language in *Darrah* was slightly different and possibly somewhat clearer than the language in Ashanti's policy. The *Darrah* policy provided that, "[i]f no entry appears above, information required to complete this endorsement will be shown in the Declarations . . . ." *Darrah*, 2010 WL 4780955, at *2 (emphasis added). Nevertheless, the language in this case — that information "required to complete this Schedule, *if not shown above*, will be shown in the Declarations" — is reasonably clear in the context of the policy as a whole.

The Court first notes that Capitol relies heavily on cases decided under Minnesota's worker's-compensation system. Under that system, an injured worker does not receive compensation unless her injury both arises out of and occurs in the course of employment. *See* Minn. Stat. § 176.021, subd. 1. Even if Adams was employed by the daycare (which the parties dispute), Adams's injury did not "arise out of" her employment as that phrase has been interpreted in the context of worker's-compensation claims. *See Dykhoff v. Xcel Energy*, 840 N.W.2d 821, 829 n.4 (Minn. 2013) (rejecting a "positional risk" or "but for" test, which would impose worker's-compensation liability when the injury would not have occurred but for the fact that the employment placed the worker in the position where he was injured); *Auman v. Breckenridge Tel. Co.*, 246 N.W. 889, 891 (Minn. 1933) (injury caused by accidental discharge of gun from nearby apartment building did not arise out of employment); *Bloomquist v. Johnson Grocery*, 249 N.W. 44, 44-45 (Minn. 1933) (injury caused by insect flying into worker's eye did not arise out of employment). If this line of cases governed, the Court would have little trouble concluding that there is no coverage.[3]

But this line of cases may not govern, and it appears that "arising out of" may have a somewhat narrower meaning in the worker's-compensation context than it does in the general run of insurance cases. *Compare Dykhoff*, 840 N.W.2d at 829 n.4 (rejecting "but for" causation in worker's-compensation context) *with Murray*, 533 F.3d at 650 ("but for" causation is sufficient in general insurance context). The Court does not mean to overstate the difference; it

---

[3]For this reason, the Court would also find that coverage is not excluded under the worker's-compensation and employer's-liability exclusions, even if Ashanti were an employee. *See* Policy at CIC 85. The Court need not address these exclusions, however, as it finds that there is no coverage.

is possible that the test is the same, despite the different ways in which courts articulate the required causal relationship. *Cf. Fisher v. Fisher*, 32 N.W.2d 424, 427 (Minn. 1948) (in worker's-compensation context, "arising out of" does not require proximate cause); *Murray*, 533 F.3d at 650 (in general-insurance context, "arising out of" does not require proximate cause). Nevertheless, the Court will focus its analysis on general insurance cases rather than on worker's-compensation cases.

Outside of the worker's-compensation context, most of the cases construing "arising out of" seem to involve automobile insurance. On the one hand, these cases make clear that "but for" causation is sufficient to establish that an injury arose out of the ownership, maintenance, or use of an automobile. *See Faber v. Roelofs*, 250 N.W.2d 817, 822 (Minn. 1977). On the other hand, these cases also make clear that "but for" causation is not established by the mere fact that the injured person happened to be using the car at the time of the injury. *See National Family Insurance Co. v. Boyer*, 269 N.W.2d 10, 14-15 (Minn. 1978) ("use of the car must be related to the accident in some way beyond being its 'mere situs'"). Instead, "[f]or an injury to 'arise out of the use of a motor vehicle,' it must be related causally to the employment of the vehicle for transportation purposes." *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 (Minn. 1979). Notably, this is true even when one could say that "but for" the injured party's use of the car for transportation purposes, the injured party would not have been in a position to be injured (just as in this case one could say that "but for" Adams's work in the daycare, she would not have been in a position to be injured).

For example, in *State Farm Fire & Casualty Co. v. Strope*, the injured party was actually riding in the insured truck at the time of her injury, which occurred when a rifle accidentally

discharged as her husband tried to pick it up off of the floor of the truck. 481 N.W.2d 853, 854 (Minn. Ct. App. 1992). The rifle was in the truck because the couple was on a hunting trip. *Id.* Obviously, but for the use of the truck for transportation, neither the woman nor the rifle would have been in the truck. Nevertheless, the Minnesota Court of Appeals held that the injury did not arise out of the use of the truck because the truck neither was actively involved nor played a necessary role in causing the injury. *Id.* at 855-56.

Similarly, in *Tlougan v. Auto-Owners Insurance Co.*, a child's mother told the child to wait in the family's truck in preparation for a drive. 310 N.W.2d 116, 116 (Minn. 1981). While waiting in the truck, the child played with matches and was severely burned. *Id.* The father had earlier placed the matches in the truck because the truck's cigarette lighter was not working. *Id.* Despite the close connection between (1) the child's and the matches' presence in the truck and (2) the use of the truck for transportation, the Minnesota Supreme Court held that the child's injuries did not arise out of the use of the truck. *Id.* at 117. The court acknowledged that the child was using the truck for transportation purposes, but the court found that the truck was the "mere situs" of the injury rather than an "active accessory" to it. *Id.* (citation and quotations omitted); *see also Boyer*, 269 N.W.2d at 12-15 (accidental gunshot that occurred as shooter was getting out of front seat and injured party was opening rear door did not arise out of the use of the car).

The causal relationship between the car and the injury in these cases is quite similar to the causal relationship between the daycare and Adams's injury in this case. The fact that the injuries in these cases all occurred in or near a car was not pure chance; in each case, the injured person was in or near the car because he or she was using, had just used, or was about to use the

car for transportation. Put another way, one could say that, but for the injured person's use of the car for transportation, the injured person would not have been in a position to be injured. Nevertheless, Minnesota courts have not found this kind of connection to be sufficient to establish that an injury arose out of the ownership, use, or maintenance of a car; instead, the use of the car for transportation must have played a more active role in causing the injury. *Strope*, 481 N.W.2d at 855.

That is exactly the situation here. But for Adams's work in the daycare, she would not have been in a position to be injured. As in the automobile cases, however, Adams's injury bears no relation whatsoever to the daycare as a business. Holloman was present in the house entirely for personal reasons and had nothing to do with the daycare. He was not in the daycare when he shot the gun. There is no evidence that he was intending to shoot into the daycare or that he was targeting Adams because of her work with the daycare. Indeed, the parties appear to agree that the shot was accidental and that Holloman was not intending to shoot Adams or anyone else. In short, the fact that Adams was a daycare worker rather than simply a visitor to the home did not contribute in any way to her injury. Just as the car was the mere situs of the injury in the automobile cases, the daycare was the mere situs of Adams's injury in this case, and for that reason her injury cannot be said to have "arisen out of" the daycare.

The Adamses try to distinguish the automobile cases on the ground that they involve different policy language — specifically, in the automobile cases, the insurance policies cover injuries arising out of the "ownership, use, or maintenance" of an automobile, whereas in this case the insurance policy covers injuries arising out of the daycare project. But the Adamses do not explain — and the Court cannot discern — why the absence of the words "ownership, use, or

maintenance" should make any difference.  In the context of automobile insurance, the phrase "ownership, use, or maintenance" narrows the scope of coverage to require a causal connection between the injury and the vehicle's use as a mode of transportation.[4]  Unlike a car (or a premises), however, the daycare project is not a tangible place or object.  Instead, it is a business — an ongoing series of activities in pursuit of profit.  To say that an injury must arise out of a business, then, is necessarily to require some connection between the injury and the conduct and activities of the business, even without the use of the phrase "ownership, use, or maintenance."  Despite the difference in policy language, therefore, the automobile-insurance cases provide helpful guidance in this case.

Outside of the car-insurance and worker's-compensation contexts, there are relatively few cases addressing the meaning of "arising out of."  The few cases that do exist support the Court's conclusion that Adams's injury did not "aris[e] out of" the daycare.  For example, in *Zimmerman v. Safeco Insurance Co.*, the Minnesota Supreme Court held that an individual's liability for sexual harassment at his workplace was excluded from homeowner's-insurance coverage under a "business pursuits" exclusion.[5]  605 N.W.2d 727 (Minn. 2000).  The exclusion disclaimed liability for bodily injury "arising out of business pursuits of any insured . . . ."  *Id.* at 729.  The

---

[4]*Cf. Boyer*, 269 N.W.2d at 14-15 ("Respondent rightly insists that the language 'arising out of use' requires a more specific finding of causation than would be needed to satisfy the policy term 'while using'; use of the car must be related to the accident in some way beyond being its 'mere situs.'"); *Arndt v. Am. Fam. Ins. Co.*, 394 N.W.2d 791, 794-95 (Minn. 1986) (noting the distinction between coverage for injury arising out of a premises and coverage for injury arising out of the *use* of a premises).

[5]Although *Zimmerman* involved an exclusion instead of a coverage clause, Minnesota courts have given the phrase "arising out of" the same broad meaning in both contexts.  *Murray*, 533 F.3d at 650 ("The phrase 'arising out of' . . . has been accorded an equally broad reading when used in an exclusion to limit coverage.").

insured argued that the sexual pursuit of another person is not a "business pursuit" and that therefore his conduct did not come within the exclusion. *Id.* at 730. The court rejected this argument. *Id.* at 731. Notably, however, the court did *not* hold that it was sufficient that the injury happened at work — which would have been similar to the position that the Adamses have taken in this case, and which would have made the court's job much easier. Instead, the court explained that sexual harassment of an employee, by definition, can *only* occur in the workplace. *Id.* at 731. That reasoning does not apply here. Whether Adams was a daycare worker or merely a visitor to the home, her injury would have been the same.

The Court therefore concludes that Adams's injury did not arise out of the daycare project. Having concluded that there is no coverage under the policy, the Court need not address the parties' arguments regarding the worker's-compensation and employer's-liability exclusions. Capitol's motion for summary judgment is granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [ECF No. 28] is GRANTED.

2. The motion of defendants Marlene Adams and David Adams for summary judgment [ECF No. 34] is DENIED.

3. The Adamses' counterclaim [ECF No. 2] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

4. The Court DECLARES that Policy No. BP02030700, issued by plaintiff to defendant LaVera Ashanti effective February 14, 2011, does not provide coverage

       for the shooting of defendant Marlene Adams at Ashanti's daycare on December 19, 2011, and plaintiff has no duty to defend or indemnify Ashanti in connection with any claim that the Adamses or others may bring against Ashanti with regard to the shooting.

5.     All claims against the unnamed defendants are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 26 , 2014                         s/Patrick J. Schiltz
                                                      Patrick J. Schiltz
                                                      Unites States District Judge